NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| EDITH PIERRE, et al.,<br><br>**Plaintiffs,**<br><br>v.<br><br>DIVERSIFIED MAINTENANCE SYSTEMS, LLC, et al.,<br><br>**Defendants.** | Civil Action No. 19-21614 (TJB)<br><br><br>MEMORANDUM OPINION |

**BONGIOVANNI, United States Magistrate Judge:**

This matter comes before the Court on the motion of Defendant, Diversified Maintenance Systems, LLC ("Defendant" or "Diversified"), for an order granting summary judgment in this matter. (Docket Entry No. 44). Plaintiffs Edith and Eddy Pierre (collectively, "Plaintiffs" or the "Pierres") oppose Diversified's motion. The parties have consented to the undersigned conducting all proceedings in this matter, including the pending motion for summary judgment, pursuant to 28 U.S.C. § 636(c) and FED.R.CIV.P. ("Rule") 73. (Docket Entry No. 42). The motion has been decided upon the written submissions of the parties' (Docket Entry Nos. 44, 45, and 48) without oral argument pursuant to Rule 78 and L.Civ.R. 78.1(b). For the reasons set forth below, Diversified's motion is GRANTED.

I.      **Factual and Procedural Background**

On September 23, 2019, the Pierres commenced this action by filing a Complaint in the Superior Court of the State of New Jersey, Law Division, Monmouth County, alleging state law claims of negligence against Macy's Department Stores a/k/a Macy's Inc. aka Macy's Merchandising Group ("Macy's") as well as several fictious defendants for injuries allegedly

sustained on Macy's premises by Edith Pierre on January 9, 2018. (*See* Ex. A to Notice of Removal at 2-6; Docket Entry No. 1-1). The Pierres also asserted a *per quod* lack of consortium claim against Macy's on behalf of Eddy Pierre. (*Id.* at 6). On November 12, 2019, the Pierres amended their Complaint to add Diversified, a housekeeping company, as a defendant in their lawsuit. (*See id*. at 12-16). Diversified removed the case to this Court on December 19, 2019. (Docket Entry No. 1).

The Pierres' claims stem from the injuries allegedly suffered by Edith Pierre on January 9, 2018, when she slipped and fell in a hallway a few steps after exiting the Macy's in the Rockaway Mall in New Jersey due to the floor in the hallway being wet. (*See* Def. Stat. of Mat. Facts in Support ¶¶ 1, 9-10; Docket Entry No. 44-1). The Pierres contend that Diversified, the housekeeping company with which Macy's contracted to "ensure that Macy's floors were clean, dry and safe for Macy's patrons to use" (Pls. Opp. at 1; Docket Entry No. 45), owed a duty to the intended beneficiaries of its contract with Macy's, such as Edith Pierre. (*See* Master Services Agreement ¶¶ 2.1, 2.5e&g, 2.6; Ex. A to Pls. Opp.) The Pierres further argue that Diversified acted negligently on January 9, 2018, when it failed to fulfill its contractual obligations, resulting in Edith Pierre becoming injured when she slipped and fell as described above. (*See id*. at 2).

Diversified moves for summary judgment, arguing that the Pierres cannot establish a *prima facie* case of negligence against it. Diversified argues that it owed no duty of care to Edith Pierre or any other patron of Macy's at the time the accident occurred. (Def. Br. at 8; Docket Entry No. 44-2). Diversified notes that it had not been present in the store for approximately one hour prior to the incident at issue. (*See* Def. Stat. of Mat. Facts in Support ¶ 15). Diversified also notes that Edith Pierre "did not see anything on the floor and walked through the 'same place'" where the incident occurred when she entered Macy's approximately one-half hour prior to the

2

incident occurring and one half hour after the last Diversified cleaner had left. (*See* Def. Stat. of Mat. Facts in Support ¶ 7). In addition, Diversified contends that it did not create or have actual or constructive notice of any hazardous condition in the hallway where Edith Pierre slipped and fell. Again, Diversified notes that its last cleaner "left the premises at 7:03 p.m. and the plaintiff's testimony confirms that the area was dry at 7:30 p.m. Thus, the condition could only have been created sometime between 7:30 p.m. and 8:00 p.m. when the plaintiff slipped and fell." (Def. Br. at 10; *See* Def. Stat. of Mat. Facts in Support ¶¶ 7, 15). Diversified emphasizes that the Pierres have "presented no evidence in terms of when [the hazardous condition] was created, [or] how long it had been present." (Def. Br. at 12). Further, Diversified argues that the Pierres can't present any such evidence because Edith Pierre "has admittedly testified to same." (*Id*.) In light of the foregoing, Diversified requests that summary judgment be granted in its favors on all claims asserted by the Pierres against it. Diversified also argues that summary judgment should be granted in its favors on all claims because of the Pierres' failure to obtain expert testimony in support of Edith Pierre's claims. (*See id.* at 16-19).

In opposing Diversified's motion for summary judgment, the Pierres rely on the Master Services Agreement between Diversified and Macy's to argue that Diversified "was under contract with Macy's to ensure that Macy's floors were clean, dry and safe for Macy's patrons to use" and that Diversified failed to comply with that duty on the night Edith Pierre was injured. (Pl. Opp. at 1; Docket Entry No. 45). Specifically, the Pierres note that ¶ 2.1 of the Master Services Agreement "required Diversified to perform 'complete day and night cleaning.'" (*Id.* (quoting Master Services Agreement ¶2.1; Ex. A to Pls. Opp.)). In addition, the Pierres note that ¶ 2.5g to the Master Services Agreement "required Diversified to ensure the safety of Macy's customers during Facility hours[,]" specifically "requir[ing] Diversified to 'devote such staff,

3

effort and resources as necessary . . . to maintain every Facility, at all times, in a first class condition . . .'." (*Id*  (quoting Master Services Agreement ¶ 2.5g; Ex. A to Pls. Opp.)). The Pierres also note that ¶ 2.6 of the Master Services Agreement provides that "'section 2 is the essence of this agreement'". (*Id* at 1-2 (quoting Master Services Agreement ¶ 2.6; Ex. A to Pls. Opp.)). The Pierres argue that "[n]othing in discovery suggests that Diversified was entitled to 'leave' prior to the time the Macy's location closed for the day." (*Id*. at 2). It is their position that Diversified's duty to the intended beneficiaries of its contract with Macy's, such as Edith Pierre, persisted and that "Diversified's 'leaving' prior to the Macy's store closing was an abandonment of Diversified's contractual obligations and negligence as a matter of law." (*Id*.) The Pierres argue that the aforementioned circumstances "create triable issues of fact which preclude the entry of summary judgment." (*Id*.)

## II.     Summary Judgment Standard

A party seeking summary judgment must "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Hersh v. Allen Prod. Co.*, 789 F.2d 230, 232 (3d Cir. 1986).  The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (noting that absent sufficient evidence favoring nonmoving party for jury verdict in its favor, no issue for trial exists).  In determining whether triable issues of fact exist, the Court must view the underlying facts and draw all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co.,*

*Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Pa Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995).

A party moving for summary judgment bears the initial burden of showing the basis for its motion and must demonstrate that there is an absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. at 323. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by ... citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)&(B). After the moving party adequately supports its motion, the burden shifts to "the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal quotation marks omitted). Indeed, to successfully oppose a properly supported motion for summary judgment, the adverse party must set forth specific facts and affirmative evidence that contradict the moving party. *See Anderson*, 477 U.S. at 250. "[I]f the non-movant's evidence is merely 'colorable' or is 'not significantly probative,' the court may grant summary judgment." *Messa v. Omaha Prop. & Cas. Ins. Co.*, 122 F. Supp. 2d 523, 528 (D.N.J. 2000) (quoting *Anderson*, 477 U.S. at 249-50). However, "if reasonable minds could differ as to the import of the evidence," summary judgment is not appropriate. *Anderson*, 477 U.S. at 250-51.

Importantly, "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Indeed, "[i]n considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor." *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255). The Court's role in deciding a motion for summary judgment is simply "to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. There is "no genuine issue as to any material fact" where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case[.]" *Celotex*, 477 U.S. at 322.

### III.   Discussion

Diversified argues that judgment should be granted in its favor on the Pierres' claims, because the Pierres have failed to establish a *prima facie* case of negligence against Diversified. Diversified contends that it did not owe a duty of care to Edith Pierre at the time she was injured, and, even if a duty of care existed, Diversified did not breach same with respect to Edith Pierre, particularly since the Pierres have put forth no evidence that Diversified had actual or constructive notice of the dangerous condition that allegedly resulted in Edith Pierre's fall. Moreover, because Eddy Pierre's *per quod* claim for lack of consortium is a derivative claim that depends on Edith Pierre's negligence claims against Diversified, Diversified argues that summary judgment must also be granted in its favor on same.

Under New Jersey law, "[t]o prevail on a claim of negligence, a plaintiff must establish four elements: (1) that the defendant owed a duty of care; (2) that the defendant breached that

6

duty; (3) actual and proximate causation; and (4) damages." *Fernandes v. DAR Dev. Corp.*, 222 N.J. 390, 403-04 (2015) (citing *Townsend v. Pierre*, 221 N.J. 36, 51 (2015)). "It is the obligation of the plaintiff to prove each element." *Coleman v. Martinez*, 247 N.J. 319, 337 (2021). Further, "whether a defendant owes a legal duty to another and the scope of the duty are generally questions of law for the court to decide." *G.A.-H. v. K.G.G.*, 238 N.J. 401, 414 (2019) (internal quotation marks and citations omitted).

"Under well-established principles a contractor has a duty to persons, other than the one with whom the contractor has made the contract, to carry out his undertaken work in a careful and prudent manner, and he may be responsible to third persons for their personal injuries and property damages proximately caused by his failure to exercise that care." *Aronsohn v. Mandarai,* 98 N.J. 92, 105 (1984). "Where, as here, a plaintiff asserts that a contractor has assumed or shares the maintenance and cleaning responsibilities of a business owner, principles similar to those associated with premises liability apply." *Danise v. Diversified Maint,*, Civ. Action No. 20-01263 (GC), 2023 WL 2263747, at *3 (D.N.J. Feb. 28, 2023) (citations omitted).

Thus, business owners, as well as those alleged to have assumed the responsibility of a business owner, "owe to invitees a duty of reasonable or due care to provide a safe environment for doing that which is within the scope of the invitation." *Nisivoccia v. Glass Gardens, Inc.*, 175 N.J. 559, 563 (2003). This duty "requires a business owner to discover and eliminate dangerous conditions, to maintain the premises in safe condition, and to avoid creating conditions that would render the premises unsafe." *Id*. Further, except where a hazard is inherent in the type of business operation at issue, "an injured plaintiff asserting a breach of [the] duty [of care] must prove, as an element of the cause of action that the defendant had actual or constructive knowledge of the dangerous condition that caused the accident." *Id*. Importantly, "[e]xistence of

7

an alleged dangerous condition is not constructive notice of it." *Sims v. City of Newark*, 244 N.J. Super. 32, 42 (Law Div. 1990). Further, the absence of actual or constructive notice "is fatal to [a] plaintiff's claims of premises liability." *Arroyo v. Durling Realty, LLC*, 433 N.J. Super. 238, 243 (App. Div. 2013).

Here, the parties dispute whether Diversified owed a duty of care to Edith Pierre at the time of her fall. The following facts, however, are undisputed: (1) on the date of the incident, the last Diversified cleaner left the premises at 7:03 p.m. (Def. Stat. of Mat. Facts in Support ¶¶ 15); (2) Edith Pierre walked through the same area of the hallway in which she would later fall at approximately 7:30 p.m. (*Id* ¶ 6-7); (3) at the time Edith Pierre initially walked through the hallway, she did not see anything on the floor (*Id*.); (4) Edith Pierre slipped and fell in the hallway she had previously walked through at approximately 8:00 p.m. (*Id*. ¶9); (5) the Master Services Agreement does not specify the daily hours Diversified is scheduled to work; (6) the Pierres rely strictly on the Master Services Agreement (¶¶ 2.1, 2.5e, 2.5g and 2.6) to argue that Diversified continued to owe Edith Pierre a duty of care after its last cleaner left for the day; and (7) Diversified's Area Manager certified that Macy's set the number of hours Diversified was supposed to work each week and that the shift worked by Diversified on January 9, 2018 was in conformity with same.[1] (*See* Cert. of George Castiblanco ¶¶ 6-10; Ex. S to Def. Reply; Docket Entry No. 48-3). Given the record evidence, the Court is hard-pressed to find that Diversified

---

[1] The Court notes that Mr. Castiblanco's Certification was submitted in support of Diversified's reply in further support of its motion for summary judgment. As such, the Pierres did not have access to same at the time they filed their opposition. Nevertheless, the Pierres had the opportunity to conduct full discovery in this matter, including discovery regarding who had the authority to set Diversified's work hours at the Macy's in question and what those hours were on the date of the incident. The Pierres also had the opportunity to support their contention that Diversified's cleaner should not have left the premises at 7:03 p.m. on the date in question with the evidence of their choosing. The Pierres chose to rely solely on the Master Services Agreement, which, as previously stated, is silent as to the daily hours Diversified is scheduled to work.

owed a duty of care to Edith Pierre at the time the incident occurred. Without evidence of such a duty, Diversified is entitled to summary judgment on Edith Pierre's negligence claims.

However, even assuming that Diversified owed a duty of care to Edith Pierre at the time of her fall, the Court finds that Diversified would nonetheless be entitled to summary judgment because the Pierres have not set forth any facts establishing that Diversified had actual or constructive notice of the alleged dangerous condition. As an initial matter, the Pierres cannot rest their theory of liability on Diversified having actual notice of the alleged dangerous condition. Indeed, nothing in the record indicates that Diversified was actually aware that the hallway where Edith Pierre fell was wet. Instead, the record establishes that the last Diversified cleaner left the premises at 7:03 p.m., that approximately one half an hour later, around 7:30 p.m., Edith Pierre walked through the hallway at issue without seeing anything on the ground and without incident, and, approximately one half an hour after that, around 8:00 p.m., Edith Pierre slipped and fell in the hallway. (*See* Def. Stat. of Mat. Facts in Support ¶¶ 7-9, 15).

Of note, the mode-of-operation rule is not applicable here. Under the mode-of-operation rule, notice is presumed "where a business has adopted a practice that in effect transfers risk from the business to the consumer by allowing customers, rather than employees, to gather goods from shelves in a self-service model." *Teixeira v. Walmart Stores, Inc.*, Civ. No. 18-13103 (KM) (ESK), 2021 WL 4272828, at *2 (D.N.J. Sept. 16, 2021) (citing *Prioleau v. Kentucky Fried Chicken, Inc.*, 223 N.J. 245, 260 (2015). However, as noted in *Danise*:

> [T]he Supreme Court of New Jersey has squarely rejected application of the rule under circumstances similar to those presented here. *See Prioleau*, 223 N.J. at 265 ("The potential for customers to track water into a building during inclement weather is not contingent on a defendant's business model; that risk exists in virtually any facility that admits patrons from public sidewalks or parking areas into its facility."). Thus, to state a negligence

9

> claim, Plaintiff must show that Diversified had constructive notice
> of the wet floor in the hallway where she slipped.

*Danise*, 2023 WL 2263747, at *4.

To prove constructive notice, the Pierres must set forth evidence that "the condition [here, the alleged wet hallway floor] existed 'for such a length of time as reasonably to have resulted in knowledge and correction had the defendant been reasonably diligent.'" *Troupe v. Burlington Coat Factory Warehouse Corp.*, 443 N.J. Super. 596, 602 (App. Div. 2016) (quoting *Parmenter v. Jarvis Drug Stores, Inc.*, 48 N.J. Super. 507, 510 (App. Div. 1957)). Constructive notice can be inferred in various ways, including through eyewitness testimony and/or the characteristics of the dangerous condition giving rise to the slip and fall, which indicate when and how long the condition had been present. *See id.* Here, however, the record is devoid of any such evidence. There is no eyewitness testimony. Further, there is no evidence regarding when the dangerous condition was created or how long it existed prior to Edith Pierre's slip and fall. Instead, the evidence in the record simply indicates that when Edith Pierre entered the Macy's via the hallway at issue, she did not notice a dangerous condition. Additionally, it indicates that approximately 30 minutes later, Edith Pierre reentered the hallway and slipped and fell. Further, the record indicates that immediately before and after Edith Pierre fell, she did not see anything on the floor. Under these circumstances, "[t]here are no facts indicating that [Diversified] w[as] responsible for creating the condition or that [it] was negligent in failing to become apprised of the situation." *Fleming v. Macy's East, Inc.*, 2008 WL 2951889, at *4 (N.J. Sup. Ct. App. Div. July 30, 2008). Absent notice of the dangerous condition, Diversified could not have breached any duty it may have owed to Edith Pierre.

While the Pierres' claim that "Diversified's 'leaving' prior to the Macy's store closing was an abandonment of Diversified's contractual obligations and negligence as a matter of law"

(Pl. Opp. at 2), they cite no law in support of this theory; instead, they simply make the bald assertion. The Court is not persuaded.

Even had the Pierres provided legal support for this theory, the record does not support a finding that Diversified left early. Instead, the record indicates that Macy's set the number of hours Diversified was supposed to work each week and that the shift worked by Diversified on January 9, 2018 was in conformity with same. (*See* Cert. of George Castiblanco ¶¶ 6-10; Ex. S to Def. Reply). As previously noted, the Master Services Agreement does not specify the daily hours to be worked by Diversified. The Pierres could have sought discovery regarding same. Indeed, they deposed Diversified's Area Manager for seven hours, but never explored this issue. The Pierres' decision to rely solely on the Master Services Agreement to establish that Diversified abdicated its duty by leaving early is theirs alone and does not create a triable issue of fact.

In light of the foregoing, Diversified is entitled to summary judgment as to Edith Pierre's negligence claims. Further, Diversified is also entitled to summary judgment as to Eddy Pierre's *per quod* claim since Eddy Pierre's *per quod* claim is derivative to Edith Pierre's negligence claims. *See Rex v. Hutner*, 26 N.J. 489, 492 (1958) (noting that husband's damages were consequence of wife's personal injury and that "his cause of action depends upon an dis incidental to her action[.]"); the Pierres do not argue otherwise.

### IV. Conclusion

For the reasons stated above, Diversified's motion for summary judgment is GRANTED. An appropriate Order follows.

Dated:  February 26, 2024

                                                  s/Tonianne J. Bongiovanni  
                                        **HONORABLE TONIANNE J. BONGIOVANNI**  
                                        **UNITED STATES MAGISTRATE JUDGE**